and I apologize for the shaking. It's Parkinson's, not delirium tremens. My name is Ray Foreman and on behalf of Chris Arnone, who spent 13 years, 7 months, and 22 days illegally confined in the Texas Department of Corrections, I represent the appellate. Dallas County obviously doesn't understand my argument, as they've admitted many times in their brief, and so I'd like to succinctly clarify it for the court. And I apologize for being unclear. The grave element of this case is that Mr. Arnone was incarcerated for 13 years, 7 months, and 22 days without there ever being a finding of probable cause to believe that he violated the terms and conditions of his deferred adjudication. Now, think about the cruel trick that this creates in Dallas County. In Dallas County, they allow the prosecutor to determine probable cause. And you say, wait a minute, didn't we have a case like that before? Yes, we did. Judge Jolly, you were on the court in Crane, which was authored by Judge Gee, adopting Justice, Judge Higginbotham's opinion that Dallas County's procedure for allowing alias capias and capias warrants to be determined without a finding of judicial probable cause violated the Constitution of the United States. And I urge the court to look at Crane because it is dispositive of the issues going on here. Let me point . . . Their argument is, with respect to the opponent's argument, with respect to that case, is that the law is changed so as to minimize the significance of Crane. Well, Your Honor, they've not mentioned Crane at all. I understand that. They didn't even mention it one time in their brief. The court below, the district court, in one of her findings, and I'm going to talk about each finding specifically, but the court below compared Crane. And I want to talk about those laws that you're talking about. The code of criminal procedure that changed is a limitation or grant of power on judicial power. That's why the Dave's case that you asked us to letter brief just decided 14 days ago really doesn't have any application here because we're not complaining about any conduct of a district judge. We're complaining of conduct of a prosecutor who brings forth a case without any probable cause whatsoever. And I'll refer you to page 1373 of the brief. I mean, not of the brief, of the record. Page 1373. This is the offending document. And the reason I say it's the offending document is because this is signed by the Bill Hill District Attorney, Dallas County, and prays that the defendant be cited to appear, a.k.a. capious. And the honorable court show cause why the court should not proceed with the adjudication of guilt of the original charge. There was never a presentment to a neutral magistrate on the issue of whether he violated probable cause to believe that he violated the terms conditions of his probation. And that's absolutely required by federal constitutional law and state constitutional law. The district attorney can't simply fill out a form and arrest Mr. Arnone for a constitutional violation with zero proof. Zero. The only evidence, and the reason that I want you to focus on that we're not trying to hold the judge accountable, the Court of Criminal Appeals already did that. A jailhouse lawyer in the prison system asked Mr. Arnone, why are you here? And he said, they say I failed a polygraph. He said, have you not read Leonard v. State? Leonard v. State is so identical to the facts of this case that when I'm reading it, I have to check and see if I'm reading Arnone or Leonard. What you're really talking about in this case, ultimately, is a policy. A policy. That's exactly right. Whose policy is it? Is it Dallas County's policy, or is it the state's policy? That's exactly right, Judge. There is a policy here. I mean, I don't think, to me, there's no question, but you have an argument, a strong argument, that there is a policy. Well, it's pretty easy to determine. It's not the district, but the law, as it's presently written, seems to say that it's not the policy of, I mean, legally, it's not the policy of Dallas County, and practically, it's not the policy of the state of Texas. So whose policy is it that offended this client? Respectfully, I disagree. I think it's the Dallas County's policy, and the reason is because the Code of Criminal Procedure limits, and it's in my letter brief, the specific code number. Let me just find it. The Code of Criminal Procedure holds that the district attorney, you can seek to adjudicate a violation of probation and forget probable cause. That's not a state law. The state law doesn't say, Mr. District Attorney in Dallas County, you can decide probable cause on your own. That's not a state law. That's a county practice and policy, and let me tell you what the district court held below, Judge Jolly. Let us begin with the fact that the court below found our Noni's pleadings were sufficient to allege a federal constitutional rights violation. She found that our allegations were sufficient to allege a fundamental rights violation. Sir? The question is, he alleged a constitutional violation, but against whom? Against the district court of Dallas County. Sure, and if it's against the state of Texas, it's barred by the 11th Amendment, and we shouldn't even be having this discussion, but it's not by the state of Texas because the state law confers the general power to the Dallas County district attorney to make decisions as to whether or not to seek a violation of probation. The policy and the system is created by the local staff. They do it different in Tarrant County. They do it different in Dallas County. They do it different in Lubbock County where I live because it's countywide policy. Not every county violates people based on polygraphed results, but Dallas County does because Dallas County doesn't care that it's been a violation of state constitutional law for over 50 years at the time. That's the truth of the matter. Now, what we're doing here is we're not here on a summary judgment. We're here on a 12B6 dismissal, and I want to make sure that the record is replete because on a 12B6 dismissal, there's the well-pleaded facts rule, and I know that the court's well familiar with this, but the court's limited in reviewing the district court's judgment below to the well-pleaded complaint. So, what I did is I took the judge's findings and I compared them to my complaint, and I believe it's abuse of discretion and in a couple of cases with all due respect erroneous in some of the findings. Okay, but you say this is a 12B6 dismissal. That's all it is. Isn't the dismissal or isn't the issue here a legal issue that can be decided on 12B6? Well, first of all, the judge found that there was a widespread practice and custom. She found that there was a policy. She found that it was violated, and she found that it violated a that Arnone fails to show the adjudication of guilt alone is sufficient to impose municipal liability. Whoa, wait a minute. That's not what we're saying completely. We're saying that Arnone should have never been back to court. He was on deferred adjudication under certain terms and documentation I'd like to refer you to. We know he was arrested because the court in its judgment at page 1370 of the record gives him credit for time served from March 20th of 23. Well, if you look at the document that I just told you was the offending document, they filed this on March 13th. A week later, they arrest Mr. Arnone without any finding of probable cause, without any judicial presentment of probable cause, and then the probation department serves it on him five days later. That's because they walk over to the jail and hand it to him in jail. Mr. Arnone spent from March 20th of 2003 to the day of this judgment, May 23rd, incarcerated in Dallas County without ever having been presented to a magistrate, without ever having had a neutral magistrate determine probable cause. That is absolutely a violation of the Fourth Amendment and the Fourteenth Amendment. Wasn't he adjudicated guilty? He was adjudicated guilty on the 23rd of May, and he was adjudicated guilty, and we're not here to complain about that. The judge's adjudication of guilt has already, he's already had his paper graded, and the court of a criminal appeal said he flunked. They tried to help the district court out by sending the case back and saying, list each and every and all the reasons that you violated Mr. Arnone's probation. The court wrote back, solely because of the polygraphs. Wrong answer. Mr. Arnone's conviction was reversed and set aside, and he was turned loose. This is a civil lawsuit under 1983 to hold the culprit who is accountable for initiating this problem in the first place, and it's the policy and the system of the Dallas County District Attorney's Office that did it. If you look at Ashcroft versus Ashcroft, 131 Southwest 2nd, 2074, the wrong of detention without probable cause continues throughout the duration of the detention. This is where the problem started, because we have a system in Dallas County, and by the way, if you compare the holdings of the district court along with my pleadings, you'll find out that my Fifth Amendment complaint names other people in Dallas County who were similarly treated, which is why the district court, and by the way, we've had no discovery. There's a federal, Judge Shuler, by the way, we've had four federal district judges on this case, and we still haven't had an answer filed by the in order to establish these issues, but just digging around myself, I found six or seven examples of people being violated, and that is what led the district court below to find that there was a widespread policy. Well, we can get there three ways. We can have a policy that's facially invalid, which we have here. We can get an official policy like the ones that I attached to my petition, which I will find for you in discovery, and then we can get there through widespread practice. I have a question about what is actually before us. I mean, if we decide that the district attorney is acting pursuant to Dallas County interests and can be charged, and the policy can be charged to Dallas County, then we just remand it for a full trial. That's right. On the other hand, if we decide that the district attorney is the agent of the state, then that ends it, and you're alone. You're out. Right, but I mean, surely the court won't decide that in contravention of Supreme Court cases that I've cited in my brief that say before probable cause, the district attorney is accountable to the state of Texas or to Dallas County, right? There's no factual dispute about that. That's a legal question. That is a legal question, and you don't have any factual evidence that is necessary to support that legal proposition. Well, I do because this document that I keep referring to as the offending document. Is that in the record? Yes, sir. It's on page 1373 of the record. This document right here is the offending document whereby it establishes the policy of Dallas County to circumvent probable cause findings by neutral magistrate. This is it, and if you look on the back, they put the allegation, and it was this document upon which Mr. Arnone was violated, arrested in violation of his federal and state constitutional rights. All right, Mr. Foreman, your red light is on, but you've got five minutes reserved for rebuttal, so we'll see you again shortly. Thank you, Judge Willett. Very welcome. Is it Mr. Hute? Pardon me if I bungled that. Quite all right. Everyone does, Your Honor. It's Shouette. Shouette. Yes, sir. Has a bit more flair to it. Welcome. Thank you. May it please the Court. My name is Jason Shouette. I'm an assistant district attorney, and I am here on behalf of the appellees, Dallas County and William T. Hill, Jr. I, of course, will be asking the Court to judge me below. As I think my supplemental brief to the Court made clear, I think that the Dave's opinion by the en banc Court speaks directly to the heart of what Judge Jolly was getting to, which is whose policy, and I won't go through a full exposition of Dave's. You're, I'm sure, more familiar with it than I will ever be, but in a nutshell, what Dave's was all about was, with respect to statutory county court judges in Texas and district court judges in Texas, is for the function of setting a bail schedule. Did they act as county officials, or did instead they act as state actors? And I think both letter briefs to the Court talked about the functional test that the en banc Court relied upon to conclude that these judicial officers acted for the state. As my letter brief pointed out, and I will be very cursory about this because I know you can read, the parallels are unmistakable in the Texas setup. In the Texas setup, by Constitution, district attorneys are judicial officers. The state courts, the Court of Criminal Appeals in Texas, are judicial officers. There is no question that if the Court looks at the reasoning in McMillian, where the Court looked at an Alabama sheriff, now there in the Alabama system, the sheriff was part of the executive department, but nonetheless, the fact that the sheriff was elected countywide didn't matter for the analysis. The fact that the sheriff in one county might do something differently than the sheriff did in another county didn't matter. That the county provided patrol vehicles and logistic support, things of that nature, didn't matter. What mattered was the function. What mattered was how state law classified that officer and that officer's actions. And what do we have in Texas? We have a state constitution that since the inception of Texas as a state, assigned to district attorneys, they were judicial officers, but they are judicial officers. Now, that doesn't mean, of course, that they're judicial officers in everything they do. Can you identify one thing they do where they would not be a state officer? Where they would not be a state officer? Yes. I think something purely administrative would be an example, and I'm going to use something like perhaps the district attorney promulgates a dress code, something like that. You know, attorneys shall be attired thus and such, or a policy, an internal policy on how you will ask for leave if you want Friday off. You must, I'm going to make something up. You must notify your supervisor two weeks prior if at all practicable, you know, and if not, bring a note home from your doctor as to why that couldn't be done. So the examples you just gave obviously involve internal organization of the district attorney's office. Can you think of a single thing that a district attorney could do with respect to the citizens of Dallas County that wouldn't be a state function for purposes of Monell? That would be what, I mean? Purposes that wouldn't be attributable to the state of Texas. It would or would not? I'm trying to think of an example. Would not. Would not. Well, I think the example I just gave would be one. I'm sorry, I'm talking about citizens of the state, so something that the district attorney does, anything affecting the citizens of Dallas County that would somehow be a county policy and hence amenable to suit under Monell. Yes, I think that I can, and with the caution I haven't perhaps given that the thought it deserved before you asked the question. The district attorney's office does engage investigators, district attorney investigators who are sworn peace officers. Can he set a policy for his local office? I think he can as to certain things. For example, how many days office employees can have or what time they have to come to work? I mean, is he acting as a state officer? Well, and if he has a policy with respect to lie detecting examinations and the validity of that, is that something that he can do locally? In some respects, yes, and I would caution the court, a lot of these things are. He can act locally with respect to certain policies, is that what you're telling me? Some things can be. Certain policies. Certain policies. Or Dallas County policies that he, that arise from his implementation. That's where it becomes difficult, particularly in a large county like Dallas where you. Then when we know that he has no authority to set the policy for tech, for the state of Texas with respect to the admission of lie detecting information, we know he doesn't have that policy, but he does exercise it in, in Dallas County, and he does it of his own volition. He might even say as, well, I guess the other side would say rogue, but he implements a policy. Why isn't that particular policy that is limited to Dallas County that is contrary to anything of his duties that he's imposed on by the state law, a local policy for Dallas County? Well, Judge, the answer comes in three parts. First, because what the Constitution of 1983 are concerned about are not violations of state law, but violations of federal law. And there, so we start with the premise that state law may or may not prohibit the use of polygraph results insofar as state law is concerned, but that doesn't matter. I think the case of Virginia versus Moore, if memory serves, where the Supreme Court said violations of state law are not necessarily violations of the Constitution. And indeed, at the time, and I think the district court pointed this out, it was not actually the law in Texas that polygraph results could not be used for this purpose. That was a statute that was passed subsequent to all of Mr. Arnone's situation. And further, if we want to look at what federal law thinks about polygraphs and whether the use of polygraph results is a violation of the federal Constitution. How does the federal government get into this? I'm losing you on that. Because in order to violate state or local policy in Dallas, does the federal government have any play in this? No, what I'm saying, Your Honor, is that violations of 1983 must be premised on violations of federal standards, federal standards, a violation of state law. Even the issue that is immediately before, so you're just a step ahead of me on that. I'm trying to answer your question as to how federal law relates to this issue. I didn't ask that question, I think. I apologize. What I'm saying, Judge Jolly, is that what Mr. Arnone is trying to do is use a violation of state law, as the district judge pointed out. Your Honor, the question that I'm addressing, and say, you may be a step ahead of me, but the question is, is this a policy of the state, or is it a policy, I mean, is the policy attributable to the state, or is it a policy attributable to the county? That's the question that, in my mind. To the state, to the state, because the district attorney is acting as a state judicial officer, and the district attorney is acting to enforce state statutory law, as found codified in the Code of Criminal Procedure. But you have told us that he can also act as an agent of Dallas County. In other things, in other things, and the example that we used was, for example, setting up perhaps a dress code, or setting up an internal procedure as to how you might ask for leave if you want time off. And in fact, some of those things would explicitly be county policy, because the county has employment codes, things like that, that say how much time off you get, and so on and so forth. Those kind of matters which do not relate to the prosecutorial function of presenting the state's policy to the court. Am I correct to understand that there is no question but that there was a policy in the district attorney's office that allowed the admissibility of polygraph examinations? No, I don't agree with that. What happened in the district court is that Mr. Arnone pointed out a couple of other examples of alleged other examples where the polygraph results had been used. The district court, in keeping with precedent, said that for the purposes of 12b-6 and what is necessary to plead a minimally sufficient complaint, that the court would say that there was enough of an allegation there that the policy component was sufficiently pleaded. But the court, I do not think, had made a final determination that there was, in fact, a policy, merely that the complaint sufficiently alleged enough so that that was in play. As I understand Mr. Foreman's argument, he seems to draw a line at probable cause and says before there's a finding of probable cause, the DA is not acting for the state. And I take it you disagree, but flush that out. I will. What happens is, is that the district attorney got information from the probation department that Mr. Arnone did not successfully complete and that he was discharged from the sex offender treatment program for his lack of successful completion. The district attorney then forms a plea, files a motion to have Mr. Arnone adjudicated. That is presented to the local judge. The judge then looks over the motion and determines that on the face of the motion that there is a sufficient allegation there. This is where the district attorney is acting as a state actor. To use the language of the cases, he is prosecuting the pleas of the state before the judicial officer, the judge. And the judicial for adjudication says, yes, there is sufficient information here to find probable cause. I am going to issue an arrest warrant for Mr. Arnone. He is arrested. And then when he's in jail, he's presented with the paperwork. Every piece of that chain, in your view, is attributable to the state and not to Dallas County. It is. It is. Because again, Judge Oldham, what the district attorney is doing is a specifically judicial act. And I know in this room, people are given to hyperbolic statements, but I find it difficult to imagine something that is more a judicial act than the constitutionally appointed judicial officer going before a corresponding judicial officer, a judge, and saying the state of Texas, by and in the name and authority of the state of Texas, asks you to adjudicate this person who is under your community supervision, guilty of the offense. Let us proceed to hearings. Let us proceed to whatever processes that the court then wants to perform, which are specified in state law at the time. 4212 of the Code of Criminal Procedure, now recodified under 42A, with no significant changes, just a recodification. I find it challenging to think of an act that is, that could be more a part of the function of the state's constitutionally appointed advocate as a judicial officer than seeking an adjudication of someone before the court supervision by filing a pleading before the court and asking the court to act upon it. The only thing I can think of that would be more so would be to be in the middle of a trial, and a distinction without a difference in my mind. In your recitation of the facts there, I missed where the polygraph test comes in. At what point did that come in as a factor in adjudicating him guilty? Because the polygraph test was the basis that the community supervision to probation department found that Mr. Arnone had not successfully completed, and so that became the basis for seeking the revocation of his community supervision. I use the terms probation and community supervision interchangeably. Your Honors, in the Texas scheme, as I'm sure Judge Willett is familiar, deferred adjudication is a status where you're essentially on probation but without a finding of guilt. Functionally, as far as supervision, again, there is no distinction to be made. You're essentially on probation, and this court's cases, as well as other courts, have said that revoking probation is a quintessential judicial act. It is what prosecutors do as state officers. Well, is it customary for the probation service to terminate or to ask the court to terminate the non-prosecution period on the basis of a failure of a lie detector test? I do not know what the, Your Honor, it doesn't appear in the record, but I do not personally know. Allegations are that there was, that the basis of his revocation was that he plumped a lie detector test. Yes, and whether the probation department, which is, again, a separate agency, different from the district attorney's office entirely, whether they would routinely do that, I do not know to what frequency they would ask a probationer be terminated. Are you saying then that if the district attorney had not been sued, but the probation officer had been sued, saying that they set probation policy on the basis of a polygraph examination, then there would be a cause of action stated on the basis of a Dallas County policy? No, we would have to look at, and I have not looked at, but we would have to look at, as this court did in Dave's, the functional test. We would have to look at how does the state probation office operate under what auspices in state law, constitutional or statutory, is it created? Are state probation officers judicial officers, or are they executive department officers? Do they operate under the aegis of the court, obviously a judicial officer? In other words, this court, in answering that question, Judge Jolly, would have to do what the Dave's court did, which would be to start at the beginning. What does the Texas Constitution say? What do Texas statutes say? What role does the probation department fulfill in the Texas constitutional and statutory scheme to determine whether they acted, in that instance, as state officials or county officials? That would be the correct and proper analysis. The inference, or the implication that I got from what you said earlier is that it is the state department that is determining their supervision on the basis of flunking a polygraph test, and that was the way it was presented to the district attorney, and the district attorney had nothing to do with respect to the polygraph test, or the flunking of a polygraph test, being the basis for revocation of supervision. And I'm, and I'm, I got the wrong idea about that? I don't know, we, I'm fearing we might be talking past one another, and I'm, I'm hoping not. The probation department has the judge's order for community supervision, which sets the terms of the community supervision for Mr. Arnone, which are tailored to him. His conditions included sex offender treatment program, which... Okay, but in this case, what you have told me is that the idea of revocation on the basis of a polygraph test came from the probation service and not from the district attorney. That's what you said. Yes, that, that is how it works. Yes, the probation department sends information to the district attorney that the probationer, Arnone, has failed to comply with the court's order for supervision, and the district attorney's as a state judicial officer, exercising his discretion allotted to him by the Constitution, decides whether or not to file a motion to revoke that supervision. I hope that answered your question, sir. Thank you. Thank you. Yes. If the district attorney knew that the predicate, in this case, the polygraph test, that the predicate for the violation of community supervision was unconstitutional, could the, could the district attorney still go and seek to have the deferred adjudication revoked, in your view? I'm going to repeat your question back, because I want to make sure I understand it. If the district attorney knew that the basis on which the DA was seeking revocation was impermissible... Unconstitutional as a federal matter. Unconstitutional. Could he then do it anyway? I suppose he could do it. It would be pointless to do so. Let me ask you, with the presiding judge's grace, let me get at it this way. Imagine, hypothetically, it's undisputed as a constitutional matter that you cannot use the failure to complete or the flunking of a polygraph examination as a basis for probable cause. Just imagine with me that this is uncontrovertible as a federal constitutional matter. That is not probable cause. Thoroughly established law. Exactly. And then imagine with me further that as a matter of state constitutional law, that neither the district judge nor the district attorney has the power to seek revocation of deferred adjudication on the basis of that, failing the polygraph examination. So as a matter of federal law and state law, there's no dispute whatsoever. And then imagine with me further that in 253 of the 254 counties in Texas, everyone gets this message. And no one is seeking to revoke deferred adjudication on the basis of polygraph examinations, because it's clear as a matter of federal constitutional law and state law that you can't do it. But there's one district attorney in the entire state that there is no Manila liability. Yes. I'm red lighted, so I don't know if you want me to continue. Give me a very succinct, fleshed out rationale for your view. Under the hypothetical that Judge Baldwin presented, which I disagree with, that it is law. But yes, he's still acting as a state judicial officer. And no matter how you slice it and dice it, even if the act itself is patently unconstitutional to bow to the hypothetical, then he still functionally is exercising his role as a state judicial officer. And that makes him someone who is not a person under 1983 and not a county policy maker. That's as succinct as I can make it. All right, Mr. Chuet. Thank you very much. Thank you, Your Honors. Mr. Foreman, you have five minutes on rebuttal. Take it away. Thank you, Judge. My arguments are not hyperbolic, but his are fantasy. I challenge this court and your clerks to find anywhere in the record what he just said, that a neutral magistrate judge reviewed the allegation of violation of probation anywhere in this record, because it is not there. It is a fantasy. That is the problem. This, page 1373, is the only thing that's there. And by the way, this game that you're trying to play about, well, we've revoked him because he violated the terms and conditions of his probation, has already been settled by Leonard v. State in the 50 years of precedent before that case, because that's the exact facts of Leonard. Judge Jolly, I sued the probation officer. I sued the district attorney, and I sued the sheriff. And after a hearing with District Judge Shuler, it was revealed that the probation office can have a policy, and they do have a policy, to use polygraphs to evaluate the trustworthiness of the subject who's on probation. That's completely illegitimate. That's why they're dismissed out of the suit. The decision and the policy at issue is the Dallas County using that, notwithstanding 70 years now. Now it's 70 years. Let me just tell you, the Leonard decision couldn't be more clear. Leonard v. State, and I just want to quote it for you, if I can hurry up. Leonard v. State says, As a matter of law, polygraphs are unreliable. Revocation involves a loss of liberty and therefore requires due process. What year was that? 2012. But it's codifying 60 years of undisturbed law. Leonard didn't create the law. Leonard codified it and said, we're tired of hearing this. Here's what the court said. In the history of this court's dealing with polygraphs, evidence is long but not very complicated. For more than 60 years, we have not once wavered from the proposition that the results of polygraph examinations are inadmissible over proper objection because these tests are unreliable. There is no question there's a policy to use polygraphs. There's no question that they didn't obtain probable cause because where is it in the record? But we're getting sidetracked and it's probably my fault. Ruling number one that we take exception to from the district court is that Arnone's adjudication of is enough to give rise to a policy and a fundamental violation. 42A108 was not a change in the law, your honor. 42108 was a codification. What's happening is the district 42108 says district judges, you shall not anymore revoke people for solely a polygraph without some other evidence. Now that proves my case, not their case. Why would we need the state legislature to enact a law unless we've got district attorneys running around out here like Dallas County using illegal inadmissible evidence continually and that's why we have a state law because the state legislature recognized that Dallas County is not the only one using polygraphs illegally. That's rule number one. Rule number two that is at issue is that in Dave's, the court's opinion from 14 days ago, this is the first time I've ever heard them admit to a dual role. They are all or none. The district attorney represents the state and that's it. That's the end of discussion but that's not true. To answer your question, Judge Oldham, the prosecution in Dallas County, it's a county policy as to whether or not they seek the death penalty on certain kinds of cases. I attached to my fifth amendment petition policy from John Crusoe, the current district attorney, that drug cases will not be prosecuted under certain terms and drug cases will be referred to drug court instead. This is a ridiculous argument that, well, dual role includes what to wear and when to come over. The district attorney's county policy is enormous and it includes the power to determine whether or not to seek the death penalty. Please remand this case back to the district court in all things. Thank you. Mr. Foreman, thank you. The case is submitted.